I, Special Agent Jason Kentros, being first duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since June 2017.  I am currently assigned to the FBI Boston Violent Crimes Task Force (VCTF), which is comprised of personnel of the FBI, Massachusetts State Police, and the Boston, Braintree, Malden, Saugus, Somerville, and Dedham Police Departments.  As a Special Agent with the VCTF, I have repeatedly responded to incidents involving violent encounters.  I have also received specialized training regarding investigative techniques, evidence collection, and evidence preservation.  I am aware that 18 U.S.C. § 2113 makes it a crime to take by force, violence, or intimidation, anything of value or belonging to banks, credit unions, or saving and loan institutions.

2. I am submitting this affidavit in support of a criminal complaint charging Jamall COPELAND ("COPELAND") with bank robbery, in violation of 18 U.S.C. § 2113.

3. Since this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to me concerning this investigation.  However, I have set forth all relevant material information I am aware of and the facts that I believe are necessary to establish probable cause to believe that COPELAND committed the charged offense.

4. The information in this affidavit is based upon my personal knowledge and experience as well as information provided to me by other members of law enforcement and witnesses.

**PROBABLE CAUSE**

5. On Wednesday, April 27, 2022, at approximately 1:45 p.m., an unknown male (UM) walked into the TD Bank located at 1270 Massachusetts Avenue, Cambridge, Massachusetts, and robbed it. The robbed TD Bank was insured by the Federal Deposit Insurance Corporation.

6. TD Bank Victim Teller 1 (VT1) observed the UM enter the bank shortly before 1:45 p.m. The UM approached VT1 and inquired about opening an account with the bank. VT1 described the UM as speaking English with a Spanish accent. VT1 inquired as to whether the UM spoke any additional languages to which the UM replied "Spanish."

7. Victim Teller 2 (VT2), a native Spanish speaker, then approached the UM. VT2 asked the UM in Spanish how she could help him. The UM replied in Spanish that he wished to open an account. VT2 recalled that the UM's Spanish was really broken, and he did not appear to be a native Spanish speaker. VT2 inquired into what type of account he wished to open and began questioning the UM in Spanish. The UM then reiterated again in broken Spanish that he wished to open an account. At this point, the UM then turned back to VT1 and handed her a demand note and stated in English "This is what I want you to do." VT2 did not recognize a Spanish accent when the UM spoke to VT1 and did not believe the UM was a Spanish speaker.[1]

8. The demand note stated "Give up all Hundreds! AN 50's Robbery!" The UM then began to yell at VT1 stating "give me the money" and "fifties and hundreds." VT1 then handed the UM $500.00 in U.S. currency and $80.00 in U.S. currency which included a GPS tracker.

---

[1] Through my training and experience I know that Bank robbers often attempt to disguise their appearance or voice to help conceal their identity. While prison records for COPELAND reveal COPELAND speaks English and does not speak a second language, I believe COPELAND was attempting to speak Spanish in an attempt to conceal his true identity.

9. After collecting the cash from VT1, the UM then went back to VT2 and demanded "fifties and hundreds." VT2 provided $875.00 in U.S. currency to the UM. After collecting the cash from VT2, the UM fled the bank. The UM left the demand note at the bank.

10. At approximately 1:45 p.m., VT2 called 911 and informed Cambridge Police dispatch that the bank had been robbed by a tall black male, wearing a black jacket and red hat.

11. Based upon my review of surveillance footage, the original description of the UM by VT2 was not accurate. The UM was in fact wearing a grey jacket and blue hat. Below is a screen capture from bank surveillance of the UM that robbed the bank on April 27, 2022:



12. Following the robbery, members of Cambridge Police (CPD) along with the FBI VCTF responded to the scene. The GPS tracker given to the UM by VT1 along with pieces of a U.S. $20.00 bill were recovered on Plympton Street, immediately adjacent to the bank. CPD also collected the bank robbery note which was left by the robber at the bank.

13. When CPD arrived on scene, VT2 spoke with a CPD officer at the door of the bank where there was a height stick which depicts height in feet and inches. VT2 pointed to the height and informed the CPD officer that she believed the UM was that approximated height. VT2 could not recall the exact height she pointed to but believed it was approximately 5'10-5'11."

14. CPD Crime Scene Services (CSS) was able to identify a latent print on the demand note. On April 27, 2022, CSS was able to run that latent print in the Automated Fingerprint Identification System (AFIS) and received a positive hit. An analyst with CSS, along with analysts from Brookline and Boston Police Departments, all verified the fingerprint match. The fingerprint lifted from the bank robbery note matched the known fingerprint of Jamall COPELAND, Date of Birth: XX/XX/1973.

15. On May 2, 2022, an FBI Agent separately provided a blind photographic array to three witnesses who observed the UM during the robbery. All witnesses were shown the same eight numbered photographs in numerical order, including a photograph of COPELAND. All photographs in the lineup were males who shared the same general features of COPELAND.

16. VT1 stated she was 70% sure COPELAND's photograph was the identity of the male who robbed the bank. VT1 also stated she was 60% sure photograph number five, and 55% sure photograph number seven, could also be the UM who robbed the bank. However, VT1 was confident that COPELAND was the UM who robbed the bank but was unable to confirm entirely.

17. VT2 stated she was 80% sure COPELAND's photograph was the identity of the male who robbed the bank. VT2 also stated she was 60% sure photograph number five could also be the UM who robbed the bank. However, VT2 was confident that COPELAND was the UM who robbed the bank but was unable to confirm entirely.

18. The third witness (WITNESS 3) was a new employee who was behind the counter at the time of the robbery. WITNESS 3 did not interact with the UM but did observe him robbing the

bank. WITNESS 3 was not able to make an identification on any of the photographs shown to her.

19. COPELAND has an extensive criminal history including charges related to murder, kidnapping, drug and firearms offenses, armed robbery, and assault with intent to murder. COPELAND was recently released from State Prison in December of 2021. COPELAND's height as listed on his Massachusetts driver's license, is 5'10." Below is a December 2021 photograph of Jamall COPELAND:



20. Based on the above information, it is my conclusion that there is probable cause to believe that on April 27, 2022, in the District of Massachusetts, COPELAND did commit bank robbery, in violation of 18 U.S.C. § 2113. I therefore respectfully request that this Honorable Court issue the requested criminal complaint.

Respectfully submitted,

*Jason Kentros/DDVR*
JASON KENTROS

FBI Special Agent

Sworn before me telephonically pursuant to Fed. R. Crim. P. 4.1 this  5  th day of May, 2022.

10:24 a.m.

*David H. Hennessy*
HON. DAVID H. HENNESSY
UNITED STATES MAGISTRATE JUDGE